## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 09-cr-120 (JCH) |
| | : | |
| JASON BAYER, | : | JANUARY 4, 2010 |
|     Defendant. | : | |

### RULING RE: MOTION FOR DISCLOSURE OF IDENTITY OF
### CONFIDENTIAL INFORMANT (Doc. No. 39)

**I.    INTRODUCTION**

On May 26, 2009, Jason Bayer ("Bayer"), the defendant in this case, pleaded guilty to a one-count information charging him with possession with the intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii).  Under those statutes, Bayer faces a mandatory minimum sentence of five years imprisonment.  However, Bayer contends that he is eligible for a departure below the statutory minimum, in light of the "safety valve" provision of the United States Sentencing Guidelines.  See U.S.S.G. § 5C1.2.   While Bayer unquestionably satisfies most of the prerequisites for safety valve eligibility, the parties dispute whether Bayer possessed a firearm "in connection with" his drug offense.  U.S.S.G. § 5C1.2(a)(2).  Bayer has now filed a Motion to Disclose the Identity of a Confidential Informant to whom he sold drugs, as part of his effort to show that the gun he was carrying at the time of his arrest was not connected to the drug crime to which he pled guilty.  For the reasons contained herein, the Motion is denied.

**II.   FACTUAL BACKGROUND**

Bayer first met the CI when Bayer was working as a bouncer at the Wagon

1

Wheel Café in New Haven, Connecticut.  Bayer sold crack cocaine to the CI on December 2, 2008, and December 4, 2008.  On December 11, 2008, the CI visited Bayer's house, where the CI purchased a shotgun from Bayer.  Later that day, Bayer and the CI arranged a crack cocaine transaction, to take place at the Subway restaurant on Kimberly Avenue in West Haven, Connecticut.

At approximately 3:45 pm on December 11, 2008, Bayer drove into the parking lot at Subway on Kimberly Avenue.  Two special agents from the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Scott Riordan and Kurt Wheeler, were waiting for him in a car.  As Bayer parked, exited his car, and began walking towards the restaurant, Special Agents Riordan and Wheeler approached Bayer from behind and apprehended him.  Special Agents Riordan and Wheeler told Bayer that he was not under arrest, but that he was the subject of an ongoing investigation.  Bayer then consented to a search of his vehicle.  During the search, the ATF officers found a loaded handgun underneath the front passenger seat, and 26 grams of crack cocaine in the glove compartment.

While Bayer admits that there was a loaded gun in his car at the time of the search, he contends that he was not carrying the gun in connection with the sale of drugs.  Rather, Bayer says he had the gun as part of his training to be a bail enforcement agent.  The government disputes this contention, arguing that Bayer told Special Agents Riordan and Wheeler at the time of the search that he had the firearm because he did not know whether the CI was "on the up and up."  Bayer denies having made this statement and wishes to introduce the CI's testimony to corroborate that the gun was not being carried in connection with the drug offense.  Bayer claims that he

was not carrying a gun in connection with his sale of drugs to the CI, because, <u>inter alia</u>, his relationship with the CI was amicable, and he therefore had no need to arm himself during the drug deal that was planned for the afternoon of December 11, 2008.

## III.   DISCUSSION

Pursuant to principles articulated in <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957), the government is generally not required to disclose the identity of confidential informants.  As the Second Circuit has stated, "[t]he government's strong and legitimate interest in protecting confidential sources from premature identification is undeniable. Identification not only compromises the government's ability to use such sources in other investigations, it may expose them to retaliation by those against whom they have cooperated."  <u>United States v. Abuhamra</u>, 389 F.3d 309, 324 (2d Cir. 2004).  This " 'informant privilege,' however, is not absolute.  To ensure a criminal defendant a fair trial, courts may require the government to identify a confidential source who 'has taken a material part' in the criminal activity at issue and 'been present with the accused at the occurrence of the alleged crime.' "  <u>Id</u>. at 325 (quoting <u>Roviaro</u>, 353 U.S. at 60-61). <u>See</u> <u>also</u> <u>DiBlasio v. Keane</u>, 932 F.2d 1038, 1042-43 (2d Cir. 1991)  ("This circuit has interpreted <u>Roviaro</u> to require disclosure when it is 'material to the defense.' ") (citation omitted).

"The defendant bears the burden of showing the need for disclosure of an informant's identity, and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial."  <u>United States v. Fields</u>, 113 F.3d 313, 324 (2d Cir. 1997) (citations omitted).  The Second Circuit has stated that a defendant will have a particularly hard time overcoming this burden "in proceedings in which hearsay

3

evidence may be received and in which the defendant's 'guilt or innocence' is not the issue to be resolved." Abuhamra, 389 F.3d at 325. Indeed, the Second Circuit has held that the informant privilege "will generally be upheld" in proceedings "[o]utside the trial context." Id. A trial judge, in determining whether a defendant has satisfied the burden of showing the need for disclosure of an informant's identity, "must consider a number of factors in determining whether the informant's testimony is material: 'the crime charged, the possible defenses, the possible significance of the informant's testimony and other relevant factors.' " DiBlasio 932 F.2d at 1042 (quoting United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.1988)).

The court concludes, based on application of the foregoing factors to the instant case, that Bayer has not met his burden of showing the need for disclosure of the CI's identity. First, as discussed infra, the testimony of the CI would be only marginally relevant to a determination of whether Bayer satisfies U.S.S.G. § 5C1.2(a)(2), under which a defendant is not eligible for the safety valve if he possessed a firearm "in connection with" the offense. Second, Bayer's guilt has already been established in this case. As stated supra, that the informant privilege "will generally be upheld" in proceedings "[o]utside the trial context." Abuhamra, 389 F.3d at 325.

The primary factor motivating the court's decision to deny Bayer's Motion to Disclose the CI's identity is that the substance of the CI's testimony would be only marginally helpful to the court in its determination of whether Bayer was carrying a gun "in connection with" his drug offense. Bayer has represented that the CI would testify only to the congenial nature of his relationship with Bayer prior to December 11, 2008, and to the fact that Bayer consequently "would have no reason to arm himself when

4

conducting business with the CI."  While the CI's proposed testimony might not be wholly immaterial to the court's determination of whether Bayer had satisfied U.S.S.G. § 5C1.2(a)(2), the government does not dispute that Bayer's relationship with the CI was amicable at the time Bayer arrived at the Subway parking lot on December 11, 2008. Indeed, the court has no reason to question the notion that Bayer and the CI were on friendly terms at the time Bayer's car was searched.

The court also emphasizes that Bayer has not represented that the CI has personal knowledge of either why Bayer was carrying the gun, or whether Bayer made a statement about not knowing whether the CI was "on the up and up."  As to the statement, Bayer does not appear to dispute that the CI was not physically present at the time the "up and up" comment was allegedly made.  The CI's lack of personal knowledge regarding either why Bayer possessed a handgun at the time of the planned drug transaction on December 11, 2008, or whether Bayer made certain statements to Special Agents Wheeler and Riordan, bear heavily on the court's conclusion that Bayer has not satisfied his burden of showing the need for disclosure of the CI's identity.

## IV.   CONCLUSION

Based on the foregoing considerations, the court concludes that Bayer has not satisfied his burden of showing the need for disclosure of the CI's identity.  The Motion for Disclosure of Identity of Confidential Informant (Doc. No. 39) is thus **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 4th day of January, 2010.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge